UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVINESHIA ISLAND,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY, et al.,

    Defendants.

Case No. 16-cv-05449-RS

**ORDER GRANTING SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Kevineshia Island brings this action against defendant State Farm Fire and Casualty Insurance Company ("State Farm") in connection with State Farm's denial of her claim of vehicle theft. State Farm now moves for summary judgment, arguing that the undisputed evidence shows that it was entitled to deny payment based on Island's material misrepresentations during the presentation of the claim. For the reasons set forth below, the motion for summary judgment is granted.

## II. BACKGROUND

The undisputed facts are as follows. On June 1, 2015, Island left her 2013 Honda Accord (the "insured vehicle") parked in her driveway at her 3615 Majestic Avenue address in Oakland, California. Island, her son Amare, and her son's father Eric McDonald went to a mall in Pleasanton, California, to take graduation and Father's Day photographs. When they arrived back at the Majestic Avenue address some time after 9:00 p.m., Island noticed that the insured vehicle

was no longer parked in her driveway. Island phoned her aunt Arnetta and confirmed that she had not taken the car. After making several calls to family and friends, Island reported the theft of her car to the Oakland Police Department at 11:35 p.m.

On or about June 2, 2015, Island learned that her neighbor's car was broken into on the same night Island's car was stolen. That same day, at or around 2:00 p.m., Island reported the theft to her insurance carrier, State Farm. On the Affidavit of Vehicle Theft, Island denied having any other vehicle claims during the preceding three years. She stated that the insured vehicle had sustained $2,300 of physical damage to its door in 2014, but did not indicate that repairs were made. Island financed the purchase of the insured vehicle through the American Honda Finance Corporation and at the time of the loss, owed $26,706.74 on her loan. She indicated on the affidavit that her account was not past due. Island had a "GAP" insurance plan for the insured vehicle and claimed there was an iPad Mini worth $699 and a Toshiba laptop worth $800 in the insured vehicle at the time of the loss.

State Farm took Island's first recorded statement on June 4, 2015. Island reported being the last person to drive the insured vehicle and that she still possessed the only set of keys. She indicated that she purchased the insured vehicle new in 2012 and made monthly payments of $719.59. In 2014, she reported the theft of a prior car to State Farm, which was eventually recovered and considered a total loss. The claim was paid by State Farm. State Farm referred Island's claim to its Special Investigative Unit ("SIU"), which noted that Island had a history of similar prior claims and that the insured vehicle was equipped with an anti-theft device. State Farm SIU claim representative Keith Dupart was assigned to the claim. Dupart took Island's second recorded statement on June 12, 2015.

On June 23, 2015, Dupart compared Island's two recorded statements and Affidavit of Vehicle Theft. Dupart noted that Island failed to disclose in her affidavit and in her first recorded statement that she had made two prior physical damage claims in connection with the insured vehicle within the preceding three years. One arose out of vandalism to the insured vehicle when it was parked outside of Island's residence. State Farm paid the claim. The other claim involved

physical damage to the insured vehicle outside of a Chuck-E-Cheese. Dupart also reviewed Island's insured vehicle loan history, and noted that she had missed three car payments during the six months preceding the theft. Upon reviewing Island's paycheck information, Dupart learned that at the time of the loss, Island was earning approximately $1,386 net income for providing care to her grandmother and approximately $3,860 net per month from her job as a staff assistant at Kaiser. Island also stated that she owed approximately $5,000 in back taxes. Later investigation by State Farm revealed that Island's bank account was overdrawn multiple times just before the alleged theft. Her credit report indicated serious delinquency and derogatory public records or collections filed.

The insured vehicle was recovered in Vacaville, California, on September 18, 2015. The vehicle was dirty, with an interior that had been partially disassembled and an airbag removed. No valuables were found in the car. State Farm retained Chad Tredway of North American Automotive Forensic Services, who examined the vehicle on October 22, 2015. In his report, dated October 26, 2015, Tredway found that the ignition lock and ignition had not been forced, defeated, or otherwise compromised. The insured vehicle's anti-theft system was operational, and there was no damage to the ignition lock or steering column. Tredway concluded, with a high degree of scientific certainty, that nothing other than a properly cut mechanical key had been used to rotate the ignition lock core.

State Farm took Island's Examination Under Oath ("EUO") statement on November 7, 2015. At this interview, Island testified that she had submitted two claims to State Farm, one for vehicle theft and one for collision. The vehicle theft related to her 2003 Ford Mustang, which was stolen in the summer of 2014. She also made a vandalism claim to AAA after the insured vehicle had been broken into while it was parked in Pinole, California. According to Island, the incident took place in 2013, the same year she switched from AAA to State Farm.

When Island purchased the insured vehicle, she was given two keys with key fobs and one valet key. She never lost the keys or had duplicates made of them, but one of the keys was destroyed when it became stuck in the ignition and broke off. She testified that a friend named

United States District Court
Northern District of California

Alonzo Moore helped her get the broken piece of key out of the ignition. The insured vehicle came with a factory alarm, which never malfunctioned or otherwise had problems. When State Farm's counsel reviewed Island's cell phone records with her, Island acknowledged that she did not call the police until about two hours after she first noticed the insured vehicle was missing, and that she called several friends before calling the police without mentioning the theft to two of them. Dupart later interviewed Arnetta Island, who confirmed her niece's description of the sequence of events on the day of the loss. Dupart also attempted to locate and interview McDonald, but was unable to reach him.

State Farm denied Island's claim by letter dated March 2, 2016, based on "direct and circumstantial evidence [that] strongly indicate[d] [Island had] engaged in concealment or fraud and false swearing." State Farm noted that Island made misrepresentations in her claim presentation, initially denying having any other insurance claims over the past three years when she had made several claims including a vehicle theft claim the year before. State Farm also cited evidence that there were serious delinquencies in Island's finances, despite her denial of financial difficulties. Finally, a forensic examination of the insured vehicle revealed that it had been driven from Oakland to Vacaville with a properly cut mechanical key, but Island asserted she had all of the keys to the insured vehicle. Based on the foregoing, State Farm concluded that denial of Island's claim was warranted. Island filed suit against State Farm in June 2016, alleging breach of contract and breach of the implied covenant of good faith and fair dealing in connection with State Farm's denial of her claim.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e*., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may: (1) give an opportunity to properly support or address

United States District Court
Northern District of California

the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Rule 56(e) (2010).

## IV. DISCUSSION

### A. Breach of Contract Claim

An insured's material misrepresentation in the presentation of a claim vitiates coverage and legally excuses an alleged non-payment by the insurer. *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1418-19 (1988); *Perovic v. Glens Falls Ins. Co.*, 401 F.2d 145 (9th Cir. 1968). The undisputed facts show that Island made misrepresentations during the presentation of her claim. On her Affidavit of Vehicle Theft, Island checked the "No" box next to the question, "Any other claims in the last three years on this or any other vehicle?" As State Farm points out, Island then signed the affidavit attesting: "By signing this document, I hereby attest, under penalty of perjury, that the information contained therein is true to the best of my knowledge." She then had the affidavit notarized. Island again made a misrepresentation in her first recorded statement, in which she acknowledged one prior claim for vehicle theft in July 2014, but did not mention other claims. State Farm later discovered the other claims through its own investigation, which Island later acknowledged.

Materiality is normally a mixed question of law and fact, but a court may decide the question as a matter of law if reasonable minds could not differ on the materiality of the misrepresentations. *See Cummings*, 202 Cal. App. at 1417. According to State Farm, a pattern of multiple, similar claims, and whether plaintiff is willing to disclose them is material to an insurer's investigation, because the prior claims may suggest the insured is making a false claim. Island's statements regarding her prior vehicle theft claim and other car insurance claims concerned a "subject reasonably relevant to the insured's investigation," and because "a reasonable insurer would attach importance to the fact misrepresented," the misrepresentation was material. *Id.*

Nonetheless, Island argues that a factual dispute exists as to whether she made false statements with the intent to defraud State Farm, precluding summary judgment. Relying upon

*Cummings*, Island asserts that under California law, whether an insured's false statement was knowingly and intentionally made with knowledge of its falsity and with the intent of defrauding the insurer is a question of fact that must go before a jury. Because Island has never admitted to lying about her claim, she reasons, a court may not conclude that she intended to conceal information from State Farm. *Cummings*, however, does not stand for the proposition that intent to defraud may only be deduced from an insured's admission to lying. Rather, the court specifically recognized that under the Supreme Court's holding in *Claflin v. Commonwealth Insurance Company*, 110 U.S. 81 (1884), "the intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured willfully makes it with knowledge of its falsity." *Cummings*, 202 Cal. App. 3d at 1418. Accordingly, the insured's intent to deceive can be established as a matter of law.

Island insists that "it would be absurd to think that [she] checked the no box with knowledge that she was making a false statement and with the intent to defraud defendant," in part because the 2014 theft claim was covered by State Farm. Opp. at 8. According to Island, because she accurately reported in her affidavit that her vehicle had sustained $2,300.00 of damage within the last three years, State Farm should have known she had a prior claim for the vehicle damage, even though she "mistakenly" denied having repairs made. *Id.* Island also appears to imply that because she eventually disclosed her prior theft and vandalism claims, she could not have been trying to mislead State Farm. Yet subsequent corrections do not excuse Island's lack of candor, particularly because one of the prior claims she initially failed to disclose was under a different insurer, AAA. Furthermore, Island's arguments are internally inconsistent, and therefore ultimately unpersuasive. She simultaneously asserts that she had knowledge of prior claims at the time she reviewed the affidavit's questions *and* that she did not know she was making a false statement by answering "no" to questions regarding the existence of such claims. It would seem that one who denies having prior claims with the knowledge that such claims exist should be aware she is making a false statement. Although Island says it was a "mistake" to disavow prior claims, she provides no evidence to support an inference that the mistake was innocent or

1  inadvertent. Nothing in the record indicates that the error was due to a lapse of memory, a

2  misunderstanding regarding the nature of the questions, or a simple mix-up between "yes" and

3  "no". In short, while Island takes issue with State Farm's assumption that she deliberately gave

4  misleading statements, she does not offer an adequate explanation of why that assumption is

5  unreasonable.

While State Farm points to other alleged misrepresentations, a discussion of those issues is unnecessary because the misrepresentations described above entitled State Farm to deny Island's vehicle theft claim. Therefore, State Farm's motion for summary judgment on Island's breach of contract claim is granted.

## B. Bad Faith Claim

An insurer breaches the implied covenant of good faith and fair dealing when it withholds policy benefits unreasonably or without proper cause. *See California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (1985). A court may grant summary judgment on an insured's bad faith claim even if the court determines there is a question of fact as to whether the insured made a material misrepresentation in the presentation of the claim. *Chaidez v. Progressive Choice Ins. Co.*, 2013 WL 1935362 at *4 (C.D. Cal. 2013). "While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay Homeowners Assn. v. Assoc. Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001).

Here, the undisputed evidence shows that State Farm did not act unreasonably when it denied Island's claim. State Farm expended a significant amount of time and effort investigating Island's claim. It obtained Island's Affidavit of Vehicle Theft, took two recorded statements of Island, reviewed her cell phone records and financial documents, and took Island's EUO. Island does not deny making inconsistent statements in the affidavit and two recorded statements, nor is she able to explain why any mistakes she made were innocent. Although she disputes State Farm's assertion that she was experiencing financial difficulties at the time of the loss, State Farm has

produced substantial evidence of a financial motive to stage the loss. Island testified at her EUO that she wanted to trade-in the insured vehicle for a larger one, but could not do so because she was underwater on the loan by $15,000. Ex. 14 at 201:24-204:24. State Farm later learned that Island had GAP insurance and would have been able to cover the difference between the value of the insured vehicle and the balance on her loan only if the vehicle was stolen or was a total loss. The investigation also revealed that in the months leading up to the loss, Island had missed several loan payments, overdrawn her accounts, and owed back taxes. Ex. 17 at 214-253, Ex. 14 at 235:5-18. Once the insured vehicle was recovered, a forensic examination determined, with a "high degree of scientific certainty," that the car was driven from Oakland to Vacaville with a properly cut mechanical key. Ex. 13 at 135-139. Island takes issue with Tredway's failure to conduct "destructive testing," but given Tredway's confidence in his findings without destructive testing, State Farm was entitled to rely on his conclusions in making the decision to deny Island's claim.

Island's bad faith claim appears to rest on two allegations: (1) that Dupart lied to her during the course of the investigation and told her she was going to jail for insurance fraud, and (2) that State Farm ignored evidence supporting her claim. State Farm denies that Dupart made such statements, and notes that Island raises this allegation for the first time in her opposition to summary judgment. Dupart's alleged comments are not mentioned in the complaint or in any of Island's sworn responses to State Farm's contention interrogatories, which specifically addressed claims for breach of the implied covenant and punitive damages. Even if Dupart did make such statements, Island fails to show that his alleged bias affected the evidence State Farm considered in evaluating her claim. She does not accuse Dupart of falsifying any of her recorded statements or financial records, or improperly influencing the conclusions made by State Farm's forensic examiner.

Island's recitation of evidence supporting her claim is similarly unavailing. She asserts that State Farm ignored evidence that she lived in a high crime area, that her aunt corroborated her story, and that the vehicle showed signs of forced entry and was missing airbags when it was recovered. Island also argues that State Farm should have considered the fact she purchased a new

car seat after the alleged loss, which suggests it was stolen from the car. She also reiterates her position that she was in better financial condition than what was represented in State Farm's analysis. Again, while State Farm's investigation may have uncovered some evidence supporting Island's claim, it was arguably outweighed by the substantial evidence undermining it. Weighing the facts, State Farm was entitled to resolve disputed issues by denying Island's claim. Because Island is unable to show that the denial was unreasonable as a matter of law, State Farm's motion for summary judgment on her breach of the implied covenant claim is granted.

**C. Punitive Damages**

Punitive damages are available where a plaintiff shows by clear and convincing evidence that the defendant acted maliciously, oppressively, or fraudulently. Island's claim for punitive damages appears to rest entirely on Dupart's alleged statements. Dupart vehemently denies making the statements, and Island's sole evidence supporting her allegation comes from hearsay statements in her declaration. Because a single declaration does not constitute clear and convincing evidence, and because Island offers no other basis to conclude that State Farm otherwise acted with fraud, malice, or oppression in handling her claim, State Farm is entitled to summary judgment on Island's punitive damages claim.

**D. Objections to Evidence**

State Farm objects to lines 5:22-6:3 of the Declaration of Kevineshia Island, on the grounds that she failed to raise these allegations in her sworn responses to State Farm's interrogatories or her sworn EUO testimony. State Farm also objects on the grounds that the statements constitute hearsay under Federal Rule of Evidence 801 and are irrelevant under Rule 401. The objection is granted.

//
//
//
//
//

ORDER GRANTING SUMMARY JUDGMENT
CASE NO. 16-cv-05449-RS
10

## V. CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted.

**IT IS SO ORDERED**.

Dated: March 16, 2018

RICHARD SEEBORG
United States District Judge